**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

INTERNATIONAL OUTDOOR, INC.,

    Plaintiff,

v.

CASE NO. 07-15125
HON. LAWRENCE P. ZATKOFF
MAG. STEVEN D. PEPE

CITY OF ROMULUS,

    Defendant.

_____/

## **OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 29, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter comes before the Court on Plaintiff's motion for partial summary judgment [dkt 18], Plaintiff's motion for partial summary judgment as to counts II–IV of first amended complaint [dkt 24], and Defendant's motion for summary judgment and/or to dismiss [dkt 25]. The parties have fully briefed each motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's motion for partial summary judgment [dkt 18] is GRANTED, Plaintiff's motion for partial summary judgment as to counts II–IV of first amended complaint [dkt 24] is GRANTED, and Defendant's motion for summary judgment and/or to dismiss [dkt 25] is DENIED.

## II. BACKGROUND

### A. FACTUAL SUMMARY

Plaintiff engages in the business of outdoor advertising by erecting billboards on sites that it leases for that purpose. Four of Plaintiff's leased sites lie within the territory of Defendant and all four are zoned M-2, General Industry. In June 2007, Plaintiff pursued building permits for its sites through conversations with Defendant's city planner, Cynthia Lyon, who informed Plaintiff that billboard construction implicates both Defendant's zoning ordinance and sign ordinance. On August 27, 2007, Plaintiff submitted to Ms. Lyon three applications for the erection of six billboards. After reviewing these applications, Ms. Lyon determined that they lacked required information and were disorganized. Eventually, Plaintiff submitted completed site plans and special-use applications on September 28, 2007.

Defendant's Administrative Review Committee, composed of outside consultants and representatives of various city departments, reviewed Plaintiff's site plans. On October 17, 2007, the committee held a mandatory meeting with several of Plaintiff's representatives to discuss the site plans. At this meeting, the committee members identified significant changes that Plaintiff should make in order to increase the likelihood that the site plans would be approved by Defendant's Planning Commission. Plaintiff takes the position that these changes were presented as necessary for approval. These changes included landscaping work, sidewalk installation or "payment in lieu of construction," compliance with parking regulations, means of access creation, access easements creation, and size reduction.

Plaintiff estimated the costs of these changes at several hundred-thousand dollars. Additionally, Plaintiff had leased the property at prices correlating to standard-sized billboards, not

the reduced size "imposed" by the committee. On October 23, 2007, Plaintiff "attempted to submit to the Romulus Building Director applications for permits to erect billboards at the . . . sites plaintiff had leased." These applications were allegedly not accepted because they did not contain the required site-plan reviews. Plaintiff thereafter abandoned its site-plan reviews before receiving a decision on any of its applications.

### B. THE ORDINANCES

Defendant's sign ordinance contains no statement of purpose. Sec. 29. The sign ordinance cross-references other statutes that do include statements of purpose such as Michigan's Highway Advertising Act, Mich. Comp. Laws § 252.301 *et seq.* ("To improve and enhance scenic beauty . . . and to limit and reduce the illegal possession and use of tobacco by minors, the legislature finds it appropriate to regulate and control outdoor advertising . . . ."). Defendant's zoning ordinance contains a statement of purpose, which indicates that the ordinance exists for the purposes of "promoting and protecting the health, safety, morals, comfort, convenience, and general welfare of the residents of the City; and . . . to promote public health, safety and welfare; to guide growth in a logical and orderly fashion; and to ensure a well-balanced community from a physical, economic, and social standpoint." Preamble and Enacting Clause.

The sign ordinance outlines the procedure by which an applicant may apply for a permit and acknowledges that "if it shall appear that the proposed structure is in compliance with all the requirements of this chapter and all other laws and ordinances of the city, [the chief building inspector] shall then issue the sign erection permit." Sec. 29-24. The same subsection provides for an appellate procedure of permit denials. The sign ordinance outlines requirements for all signs, and section 29-92 specifies the requirements particular to billboards. This section places area and height

3

limitations on billboards, sec. 29-92(a), as well as location limitations, sec. 29-92(b). The ordinance also specifies the materials that shall be used in billboard construction. Sec. 29-92(c). Pursuant to the sign ordinance, "[e]rection permits for billboards that are in compliance with this chapter shall be issued by the chief building inspector without site plan review." Sec. 29-92(e). The sign ordinance also mandates unobstructed access to billboards for operation, maintenance, repair, and inspection purposes. Sec. 29-92(g).

Defendant's sign ordinance contains intermittent references to the need for signs to comply with "other laws and ordinances of the city." *See, e.g.*, sec. 29-24. Thus, although the provisions relating to billboard construction do not directly reference Defendant's other ordinances, they must nonetheless be considered in light of Defendant's zoning ordinance. In the event that Defendant's ordinances conflict, the general provisions of the zoning ordinance grant supremacy to whichever ordinance or law "is more restrictive or imposes higher standards." Sec. 4.01.

Defendant's zoning ordinance explains that billboards "are only permitted with special approval and are subject to the standards and requirements for special approval of this Ordinance." Sec. 4.25E3. Article XXVI of Defendant's zoning ordinance governs standards and procedures for uses, such as billboards, that are subject to special approvals. This article of the zoning ordinance grants sole authority to Defendant's City Council "to approve, approve with conditions or disapprove all special approval land uses." Sec. 26.02. Before the City Council takes any action on special-approval applications, the city's Planning Commission must hold "a public hearing, prepare a report of their findings and submit a recommendation to the City Council." *Id.* The Planning Commission is to review each application individually "as to its appropriateness and must find affirmatively each of the general standards of Section 27.03 and to the specific standards

4

enumerated for that use." *Id.* The reference to Section 27.03 appears to be in error. Article XXVI of Defendant's zoning ordinance repealed former Article XXVII. Having been provided with no Section 27.03 and in light of the Editor's note to the ordinance provided to it,[1] the Court believes that the reference to the "general standards of Section 27.03" actually refers to the general standards of Section 26.03, which is, indeed, entitled "General standards." All special approvals "shall be subject to conditions, restrictions, and safeguards deemed necessary to the interest of the public health, safety and welfare." *Id.*

The general standards set forth in Section 26.03 govern the decision of the City Council regarding special approvals; the Council must find affirmatively each of the following standards:

    A.    The proposed special approval land use shall be of such location, size and character that it will be in harmony with the appropriate and orderly development of the surrounding neighborhood and/or vicinity and applicable regulations of the zoning district (including, but not limited to, any applicable performance standards) in which it is to be located.

    B.    The proposed use shall be of a nature that will make vehicular and pedestrian traffic no more hazardous than is normal for the district involved, taking into consideration vehicular turning movements in relations to routes of traffic flow, proximity and relationship to intersections, adequacy of sight distances, location and access of off-street parking and provisions for pedestrian traffic, with particular attention to minimizing child-vehicle interfacing.

    C.    The proposed use shall be designed as to the location, size, intensity, site layout and periods of operation of any such proposed use to eliminate any possible nuisance emanating therefrom which might be noxious to the occupants of any other nearby permitted uses, whether by reason of dust, noise, fumes, vibration, smoke or lights.

---

[1] The Editor's note indicates that "Section 2 of an ordinance adopted July 8, 1991, repealed former Art. XXVII, §§ 27.01, 27.02, and enacted a new Art. XXVII, now referred to as Art. XXVI to read as set out herein. The repealed provisions pertained to a similar subject matter and derived from the zoning ordinance of the city as adopted on April 27, 1982."

D. The proposed use shall be such that the proposed location and height of buildings or structures, the location, nature and height of walls, fences and landscaping, and the location, size or height of signs will not interfere with or discourage the appropriate development and use of adjacent land and building or unreasonably affect their value.
E. The proposed use shall relate harmoniously with the physical and economic aspects of adjacent land uses as regards prevailing shopping habits, convenience of access by prospective patrons, continuity of development, and need for particular services, facilities and utilities in specific areas of the City.
F. The proposed use is so designed, located, planned and to be operated that the public health, safety and welfare will be protected.
G. The proposed use shall not be detrimental or injurious to the neighborhood within which it is to be located, nor shall such use operate as a deterrent to future land uses permitted within said zoning district, and shall be in harmony with the general purpose and intent of the Zoning Ordinance.

Applications for special approval must be accompanied by a complete site plan. Sec. 26.04. Defendant's zoning ordinance contains general provisions that highlight the method by which applicants must submit proper site plans. Among other requirements, each site plan must include "[s]ufficient shade trees, pines and shrubs . . . to ensure an attractive and aesthetically pleasing development." Sec. 4.03(C)(8). Approval of site plans "shall satisfy the requirements of this Zoning Ordinance for the issuance of a building permit." Sec. 4.03(E)(2). The section regarding the Board of Zoning Appeals grants the Board authority to "attach such conditions as may be deemed necessary in the furtherance of the purposes of this Ordinance, provided any conditions are in compliance with each of the following three standards." Sec. 24.04G. First, any additional conditions must "[b]e designed to protect natural resources, the health, safety and welfare, as well as the social and economic well being of those who will use the land use or activity under consideration." Sec. 24.04G1. Second, additional conditions must "[b]e related to the valid exercise

of the police power and purposes which are affected by the proposed activity." Sec. 24.04G2. And third, additional conditions imposed by the Board must "[b]e necessary to meet the intent and purpose of the zoning regulations; be related to the standards established in the ordinance for the land use or activity under consideration; and be necessary to insure compliance with those standards." Sec. 24.04G3. The zoning ordinance sets forth an appellate process and mandates that the record and decision of the Board on appeal shall "[r]epresent[] the reasonable exercise of discretion granted by law to the Board of Zoning Appeals." Sec. 24.05G**.**

### III. LEGAL STANDARDS

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

7

relief may be granted tests the legal sufficiency of Plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Further, the Court need not accept as true legal conclusions or unwarranted factual inferences. The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(b).

## IV. ANALYSIS

Plaintiff argues that Defendant's sign and zoning ordinances are unconstitutional on a number of levels. First, Plaintiff observes that the sign ordinance lacks a statement of purpose and therefore cannot conceivably advance a governmental interest since no interest is specified. Second, Plaintiff contends that the zoning ordinance constitutes a prior restraint on free speech in the sense that it confers broad, standard-less discretion on officials who decide whether to approve a particular billboard. Third, Plaintiff maintains that Defendant's zoning ordinance is unconstitutional because it places no time limit on reviews of proposed plans. Fourth, Plaintiff takes the position that,

8

notwithstanding its foregoing arguments, the ordinances in question do not directly advance any purported governmental interest. Finally, and in response to Defendant's argument, Plaintiff avers that its claim is ripe for review since it constitutes a valid facial challenge to the constitutionality of the ordinances.

Defendant counters that Plaintiff's claim is not ripe for review because Plaintiff cancelled its applications before Defendant had the opportunity to approve or deny them; thus, Plaintiff has not yet technically suffered any injury. Defendant argues further that the lack of a statement of purpose does not automatically render the ordinances unconstitutional, especially when considering the widely recognized dangers of billboards. Defendant posits that the zoning ordinance contains objective standards for permit approval and therefore is not a prior restraint on speech. Additionally, Defendant disputes that the lack of a specified time limit impacts the zoning ordinance's constitutionality. Defendant also maintains that the ordinances constitute legitimate content-neutral time, manner, and place regulations of speech.

### A. RIPENESS

The doctrine of ripeness exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967). Stated differently, "[t]he question of ripeness arises in those cases 'anchored in future events that may not occur as anticipated, or at all.'" *Insomnia Inc. v. City of Memphis*, 278 Fed. Appx. 609, at *7 (6th Cir. 2008) (quoting *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006)). The ripeness of a particular case implicates both

9

Article III limitations on judicial power and prudential considerations for abstaining from exercising jurisdiction. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (citations omitted); *Kentucky Press Ass'n, Inc.*, 454 F.3d at 509. Even in situations raising only prudential concerns, the Court may consider the doctrine of ripeness. *Reno*, 509 U.S. at 57 n.18.

In determining whether an action is "ripe," the Court must evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."[2] *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003). In the context of the First Amendment, "the ripeness doctrine is somewhat relaxed." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002); *see also* 13A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.3 (1984) ("First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection.").

The Court finds it instructive to analogize the ripeness of this issue to the related concept of standing in the same First Amendment context. As with ripeness, prudential standing rules are "somewhat relaxed in the First Amendment context." *King Enterprises, Inc. v. Thomas Twp.*, 215 F. Supp. 2d 891, 906 (E.D. Mich. 2002). In order to protect the "freedom of expression and the unfettered exchange of ideas," third parties may bring facial challenges in certain situations. *Id.* Third parties, for example, may wage a facial challenge to an ordinance that amounts to a prior restraint of protected speech. *Id.* In *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988), the Supreme Court held that "in the area of freedom of expression it is well established that

---

[2] The Sixth Circuit occasionally articulates the test in three parts: (1) the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass"; (2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims"; and (3) "the hardship to the parties if judicial relief is denied at [this] stage in the proceedings." *Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 568 (6th Cir. 1995).

one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, . . . whether or not he applied for a license." *Id.* at 764 (quoting *Freedman v. Maryland*, 380 U.S. 51, 56 (1965)). The Supreme Court further observed that the evils of unbridled discretion and prior restraint "engender identifiable risks to free expression that can be effectively alleviated only through a facial challenge." *Id.* at 757. In permitting that particular suit to proceed, the *City of Lakewood* court also noted that

> the absence of express standards makes it difficult to distinguish, "as applied," between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power. Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.

*Id.* at 758.

Defendant cites to *National Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005), for the proposition that Plaintiff's claim is not ripe for review by this Court. That particular case involved a similar, but distinguishable, fact pattern. In that case, the plaintiff lodged no facial challenge against the ordinance nor did the plaintiff allege that the ordinance constituted a prior restraint on free speech. In that case, the court concluded that it was "incapable of determining if, let alone why, National's applications were denied. Without that crucial information, it would be impossible to determine if the City's zoning ordinance violates the constitution." *Id.* at 1341. Here, the Court is not so constrained. Plaintiff's allegations raise questions as to whether Defendant's ordinances contain objective standards by which to measure their constitutionality. In circumstances such as those before this Court, it is irrelevant whether a particular applicant was rejected

11

permissibly because the very procedure itself is in question.

Applying the two-part ripeness test, the Court finds that the issues here presented are fit for judicial review. Plaintiff alleges that the zoning ordinance confers unbridled discretion on governmental authorities and that the sign ordinance itself is facially unconstitutional because it lacks a statement of purpose. These concerns are not unique to Plaintiff but impact all applicants. As such, Plaintiff's claims fall within the ambit of permissible First Amendment facial challenges. Further, both parties would suffer hardship should the Court reserve consideration at this time. Plaintiff has expended significant time and money in preparing applications, and both parties have done the same in this suit. Requiring Plaintiff to resubmit applications and await denial before adjudicating this claim would be a colossal waste of time and expense, especially when considering that the nature of the facial challenges brought by Plaintiff suggests that these claims will inevitably arise.

### B. STATEMENT OF PURPOSE

The United States Constitution forbids the creation of any law "abridging the freedom of speech." U.S. Const. amend. I. This protection does not grant citizens absolute freedom to communicate their views at all times and in any manner they choose. *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 474 (6th Cir. 2007). The government may thus impose reasonable restrictions on the time, place, and manner of protected speech, provided that the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

Regulations of commercial speech, such as the speech in question here, are subject to a four-part test as delineated by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). First, the commercial speech must concern lawful activities and not be misleading. *Id.* at 563–64. Next, the government must establish a substantial interest in support of the regulation. *Id.* at 564. The third prong of the *Central Hudson* test requires that the proposed restriction or regulation directly and materially advance the substantial governmental interest set forth in the second prong of the test. *Id.* Finally, the regulation must be narrowly tailored to achieve the government's desired result: "if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive." *Id.* at 564. The burden to establish a "reasonable fit" between the government's substantial interest and the ordinance provision rests with Defendant. *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993); *see also Bd. of Trustees of the State Univ. Of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (quoting *In re R. M. J.*, 455 U.S. 191, 203 (1982)).

In this instance, Plaintiff essentially alleges that a full examination of the sign ordinance is not warranted because it lacks a statement of purpose and therefore necessarily fails the *Central Hudson* test. A number of courts have agreed with Plaintiff's position and struck down ordinances as unconstitutional when they lack statements of purpose and no extrinsic evidence of the government's enacting purposes can be provided. *See, e.g.*, *Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996); *Nat'l Adver. Co. v. Town of Babylon*, 900 F.2d 551, 555 (2d Cir. 1990); *Carroll v. City of Detroit*, 410 F. Supp. 2d 615, 623 (E.D. Mich. 2006); *Adams Outdoor Adver. of Atlanta, Inc. v. Fulton County*, 738 F. Supp. 1431, 1433 (N.D. Ga. 1990) ("[T]his court cannot permit defendant to justify its restriction of protected speech with after the fact

13

invocations of esthetics and traffic safety."). The consensus of these decisions is that a court cannot possibly conduct the *Central Hudson* examination if it has before it no statement or evidence of a governmental purpose.

Defendant asserts that the lack of a statement of purpose is not fatal in and of itself. The cases it cites to advance this argument, however, are all distinguishable from the present case. The decision in *Bad Frog Brewery v. New York State Liquor Authority*, 134 F.3d 87 (2d Cir. 1998), for example, involved the New York State Liquor Authority's decision to ban a particular company's beer labels because, in its view, the labels were vulgar and profane. *Id.* at 98. In contrast to strict First Amendment concerns, however, a regulation implicating the Twenty-First Amendment "demands wide latitude for regulation by the State." *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 42 (1966). In another case to which Defendant cites, the court admitted that the situation before it was not one "where the City has proffered a post hoc rationalization that is at odds with the purpose of the framers." *People v. Target Adver. Inc.*, 184 Misc. 2d 903, 911 (N.Y. Crim. Ct. 2000). Other cases to which Defendant cites involve ordinances or statutes that had original statements of purpose that had been amended over time or testimony from individuals who could speak to their original intent. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 (1983) (permitting modernized explanations to an ordinance that had been in existence since 1893 and that had an "original motivation"); *Edenfield v. Fane*, 507 U.S. 761 (1993) (considering a former chairman's affidavit indicating enacting purpose). In this case, there is no original purpose to provide the Court with a point to begin its inquiry as there was in *Bolger* or *Edenfield*. Nor has Defendant produced any evidence as to the governmental interests behind its sign ordinance.

Defendant further argues that despite the fact that its sign ordinance lacks a statement of

14

purpose, it cross-references several Michigan statutes that do have statements of purpose. Defendant also contends that its zoning ordinance contains a broad statement of purpose that applies to its other ordinances. These arguments are not compelling and have been rejected by other courts considering similar circumstances. *See Town of Babylon*, 900 F.2d at 555. It is not the role of the Court to divine the intentions behind Defendant's ordinances. *Adams Outdoor Adver.*, 738 F. Supp. at 1433. Nor is the Court inclined to extrapolate governmental intentions because other related ordinances in other jurisdictions have set forth legitimate governmental interests in aesthetics and traffic safety. Defendant here asks the Court to assume these are the same intentions behind its sign ordinance but has produced no evidence that it was enacted for those purposes. The Court may not assume facts for purposes of constitutional inquiry. Without a stated purpose or any extrinsic evidence regarding the enactment of the sign ordinance, the Court's inquiry under *Central Hudson* necessarily fails. Accordingly, Defendant's sign ordinance is facially unconstitutional. Because the lack of a governmental interest impacts the entire sign ordinance, the Court need not discuss the remaining provisions of the sign ordinance as they pertain to Plaintiff's claims.

### C. PRIOR RESTRAINT

Concerns of prior restraint arise whenever speech is conditioned upon prior approval by public officials. *Nightclubs Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000). Where an ordinance affords unbridled discretion to public officials or agencies, the ordinance amounts to a prior restraint and may result in censorship. *MacDonald Adver. Co. v. City of Pontiac*, 916 F. Supp. 644, 648 (E.D. Mich. 1995) (citing *City of Lakewood*, 486 U.S. at 757). To prevent prior restraint and censorship, cities must "establish neutral criteria to insure that the licensing decision is not based on the content or viewpoint of the speech being considered." *City of Lakewood*, 486 U.S. at

785. The criteria must consist of "narrow, objective, and definite standards." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969).

The interplay of Defendant's sign and zoning ordinances creates a veritable maze for those seeking to understand their requirements. Although the sign ordinance states that billboards shall be approved without site-plan approval, the zoning ordinance dictates that billboards require special approval, which in turn requires site-plan approval. A different section of the zoning ordinance indicates that when various ordinance provisions clash, the more stringent provision governs. Therefore, the Court interprets Defendant's ordinances as requiring site-plan approval for billboards despite the fact that the sign ordinance explicitly states that no such approval would be required.

In order to grant special approval, Defendant's Planning Commission must find that the proposal satisfies each of the ordinance's general standards. These standards require that the use "be in harmony with the appropriate and orderly development of the surrounding neighborhood." The general standards also require that the proposed use "will not interfere with or discourage the appropriate development and use of adjacent land and building or unreasonably affect their value" and that "[t]he proposed use shall relate harmoniously with the physical and economic aspects of adjacent land uses." Further, the general standards mandate that "[t]he proposed use is so designed, located, planned and to be operated that the public health, safety and welfare will be protected" and that "[t]he proposed use shall not be detrimental or injurious to the neighborhood within which it is to be located, nor shall such use operate as a deterrent to future land uses permitted within said zoning district, and shall be in harmony with the general purpose and intent of the Zoning Ordinance." Courts have previously struck down similar "standards" as unconstitutional. In *MacDonald Advertising Co.*, for example, the court scrutinized an ordinance requiring that proposed

16

constructions "will not unreasonably injure the surrounding neighborhood . . . and that any proposed [construction] shall not be out of harmony with the predominant type of building in the particular district." 916 F. Supp. at 650. Under such circumstances, the *MacDonald* court found that "there is nothing in the ordinance 'standards' which insures that the Commissioners' discretionary licensing decision will not be based on speech content. Therefore, the ordinance is facially invalid." *Id.* As was the case with the ordinance in *MacDonald*, the zoning ordinance at issue here contains a litany of arbitrary "standards" that the Commission must review in order to grant special approval. Criteria that entails determining harmonious balance and the likelihood of unreasonable harm are not the "narrow, objective, and definite standards" required by the Supreme Court.

The flaws of Defendant's zoning ordinance do not end with its general-standards section. If an applicant were to satisfy the subjective general standards, it would still have to gain site-plan approval, which requires, among other things, "[s]ufficient shade trees, pines and shrubs . . . to ensure an attractive and aesthetically pleasing development." Finally, the zoning ordinance empowers the Board of Zoning Appeals to "attach such conditions as may be deemed necessary" provided that those conditions are "designed to protect natural resources, the health, safety and welfare, as well as the social and economic well being of those who will use the land use or activity under consideration, residents and land owners immediately adjacent to the proposed land use or activity and the community as a whole." Each conceivable stage of approval or appeal set forth in Defendant's ordinances is fraught with ambiguity and arbitrariness. As a result, Defendant's zoning ordinance is facially unconstitutional.

### D. SEVERABILITY

The materials submitted to the Court do not indicate whether Defendant's ordinances contain

17

a severability clause whereby unconstitutional portions may be excised without disturbing the entire ordinance. Should such a clause exist, Defendant shall submit it to the Court within ten days of the entry of this order and the Court will review it to determine whether this order requires amendment in any way.

## V. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment [dkt 18] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment as to counts II–IV of first amended complaint [dkt 24] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment and/or to dismiss [dkt 25] is DENIED.

IT IS FURTHER ORDERED that Defendant shall provide to the Court any severability clause that might exist within its sign or zoning ordinances within ten days of the entry of this order.

IT IS SO ORDERED.

    S/Lawrence P. Zatkoff
    LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

    Dated: October 29, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by

electronic or U.S. mail on October 29, 2008.

                <u>S/Marie E. Verlinde</u>
                  Case Manager
                 (810) 984-3290